Commonwealth *v.* Dussell, Appellant.

Argued January 12, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John W. Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellant.

*Paul R. Michel,* Assistant District Attorney, with him *James D. Crawford,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1970:

Jack R. Dussell was convicted of burglary and other related offenses after a nonjury trial in Philadelphia. Post-trial motions were denied, and a prison sentence was imposed. On appeal the Superior Court affirmed the judgment. We granted allocatur and now reverse, because we conclude that evidence was admitted at trial

which was obtained through an unlawful search and seizure.[1]

The relevant facts may be briefly summarized as follows: On December 18, 1967, at approximately 9:15 p.m. two police officers on routine patrol in the city of Philadelphia observed a 1954 Chevrolet automobile proceed through an intersection in violation of a red (stop) light. The officers pursued the car and stopped it a block away. The driver of the automobile identified himself as William Price and produced a driver's license and other identification. The passengers identified themselves as Jack Dussell and Frederick Zemaitatis. Price was unable to produce the owner's registration card and a search of the body of the car for such by the occupants proved fruitless. Price told the police that he was using the automobile with the permission of the owner whom he identified as a man named Mr. Lane—"a fellow he had met in a restaurant on Elmwood Avenue."[2] This explanation was not sufficient for the policemen and they then requested that the trunk be opened. Price took the key from the ignition and opened the trunk.[3] Therein, the police saw a set of golf clubs in the original retail packaging, together with other items. Having read in the newspaper that a Pro Shop in the police district had been recently burglarized and golf clubs were stolen, the

---

[1] Pretrial a motion to suppress this evidence was sustained by the trial court, but on appeal by the Commonwealth the Superior Court reversed the suppression order and directed that the trial proceed. See 214 Pa. Superior Ct. 1, 248 A. 2d 857 (1969).

[2] This was the testimony of the Commonwealth's witnesses. However, Price testified at trial that he explained to the officers that he borrowed the automobile from a Thomas Lane to drive some friends home. The automobile was registered in Lane's name, and he did in fact lend it temporarily to Price.

[3] The Commonwealth does not argue that the search was based on consent, and we do not consider this issue.

police reasoned that the articles in the trunk were the product of this crime. Thereupon the officers took the three men and the car to police headquarters "for further investigation." The golf clubs and other items were seized by the police and subsequent investigation disclosed that at least some of the articles had been stolen in a burglary which occurred prior to the night involved. Dussell was arrested and convicted of participating in this burglary. At trial the seized items were admitted in evidence against him, over objection. It is now fundamental that if the property involved were the fruit of an unlawful search, the evidentiary use thereof was constitutionally impermissible and violated due process of law: *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684 (1961); *Commonwealth v. Pearson,* 427 Pa. 45, 233 A. 2d 552 (1967).

The Commonwealth does not, nor could it, contend that because the driver of the automobile was criminally liable for two violations of The Vehicle Code (Act of April 29, 1959, P. L. 58, 75 P.S. §101 et seq.), i.e., proceeding through a red light and failing to have in his possession the owner's automobile registration card, that this, without more, permitted a warrantless search of the automobile.[4] But it does urge that, under the circumstances, the search was justified by the need to seize hidden weapons which might be used to assault the officers or effect an escape, as well as by the need to prevent the destruction of evidence of a crime. We do not agree.

---

[4] There is no right to search either the automobile or the occupants when an arrest is made for an ordinary traffic offense: *Amador-Gonzalez v. U.S.,* 391 F. 2d 308 (5th Cir. 1968); *U.S. v. One 1963 Cadillac Hardtop,* 224 F. Supp. 210 (E.D. Wisc. 1963); *U.S. v. Tate,* 209 F. Supp. 762 (D. Del. 1962); *People v. Blodgett,* 46 Cal. 2d 114, 293 P. 2d 57 (1956); *People v. Mayo,* 19 Ill. 2d 136, 166 N.E. 2d 440 (1960); *State v. Michaels,* 60 Wash. 2d 638, 374 P. 2d 989 (1962). See generally Annot., 10 A.L.R. 3d 314 (1966).

We recognize that a special rule prevails as to the stopping and searching of moving vehicles suspected of being used in criminal activity. See *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280 (1925), and *Brinegar v. United States*, 338 U.S. 160, 69 S. Ct. 1302 (1949). However, even where the search of a moving vehicle is involved, the officers must have independent probable cause to believe that a felony has been committed, and must have a basis for believing either that evidence of the crime is concealed in the vehicle or that there are weapons therein accessible to the occupants of the car. *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S. Ct. 1472 (1968), and *Brinegar v. United States*, supra. Mere suspicion or good faith on the part of the officers is not enough: *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), and *Brinegar v. United States*, supra. Nor may the fruits of the search be used to justify it.

Clearly the evidence in the present case was insufficient as a matter of law to establish probable cause on the part of the officers that the occupants of the automobile had committed a burglary, and that evidence thereof or weapons were concealed in the trunk of the vehicle. Cf. *Commonwealth v. Harris*, 429 Pa. 215, 239 A. 2d 290 (1968). Nor are we persuaded that the circumstances were sufficient to establish probable cause on the part of the officers that the automobile was a stolen vehicle.[5]

The automobile was fourteen years old. It was not listed on any "hot sheet." The keys were in the ignition. The driver was in possession of a valid operator's

---

[5] In view of this conclusion, we need not reach the question of whether or not the officers had the right to search the trunk of the automobile without a warrant, even if probable cause existed to believe the car was stolen. But see, *United States ex rel. Chambers v. Maroney*, 408 F. 2d 1186 (3d Cir. 1969).

license and other identification material. The passengers also produced identification documents.

We recognize that the evidence required to establish "probable cause" need not amount to that required to convict (*Henry v. United States,* 361 U.S. 98, 80 S. Ct. 168 (1959)); however, it must be more than that which gives rise to a mere suspicion. "[T]he general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it . . . .' " *Chimel v. California,* 395 U.S. 752, 762, 89 S. Ct. 2034, 2039 (1969). This burden has not been met here.

The order of the Superior Court and the judgment of the trial court are reversed and a new trial is granted.