## Commonwealth v. Davis

*Merrill W. Kerlin,* for Commonwealth.
*Albert Foster,* for defendant.

MacPHAIL, P.J., March 27, 1972.—This defendant is charged with possession of narcotic drugs, a felony. A motion to suppress was timely filed and a hearing has been held. There is a substantial dispute in the facts. From the testimony at the hearing, we make the following:

## FINDINGS OF FACT

1. Defendant was stopped on the Pennsylvania Turnpike at 10 a.m. on a bright clear day for operating his motor vehicle at 39 miles per hour in a speed zone where the minimum speed was 40 miles per hour.

2. Two Pennsylvania State Police troopers approached the car and asked the operator (defendant) for the registration card and his operator's license.

3. While the cards were being produced, one of the officers noticed two smoking pipes "underneath the dashboard" inside the vehicle. One of the pipes had a smoking screen inserted in the bowl. The officer had had previous instruction to the effect that smoking pipes with a screen in the bowl were used to smoke marihuana.

4. Defendant and his passenger were ordered to get out of the vehicle and Miranda warnings were given to defendant.

5. One of the troopers took the pipe with the screen inserted in it out of the car without a warrant and without the consent of defendant.

6. While a search warrant was being procured by one of the officers, defendant turned over to the other officer two cellophane bags allegedly containing marihuana after he was told that the officer had probable cause to obtain a search warrant, that a search warrant was being procured and that if there was anything he wanted to turn over to the police, he should do so.

7. Thereafter, the second police officer appeared with a search warrant in the execution of which nothing further was found. The issuing authority was located one and one-tenth miles from the point where the arrest and search occurred.

## DISCUSSION

As is usually the case, this set of facts has a new

"wrinkle" in it. There are several questions to be answered. Was the seizure of the smoking pipe invalid? If it was, what effect does this have on everything that transpired thereafter? Was there an independent "voluntary" delivery of marihuana to the police in the face of an impending but not physically present search warrant?

Nothing in the evidence of this case justifies the seizure of the pipe. At the time it was seized, there was no warrant. Pennsylvania cases have held that an arrest for a summary offense, such as traveling under the minimum speed, cannot be used to support a warrantless search: Commonwealth v. Dussell, 439 Pa. 392 (1970). The seizure in this case must, therefore, be justifed by "probable cause." "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed": Henry v. United States, 361 U.S. 98, 4 L. Ed. 2d 134 (1959). "Even 'strong reason to suspect' will not adequately substitute for probable cause as grounds for an arrest or search": Commonwealth v. Pinno, 433 Pa. 1 (1968). "Good faith" on the part of the arresting officers is not enough: Henry v. United States, supra.

Here, we have an officer observing a pipe with a screen in it. Mere looking at that which is open to view is not a search: Commonwealth v. Anderson, 208 Pa. Superior Ct. 323 (1966). His training tells him that marihuana is smoked in pipes similarly equipped. Under these circumstances, he seizes the pipe. While the presence of a pipe with a screen in it *could* be used to smoke marihuana, it might also be used for other purposes. Obviously, no one was smoking the pipe at the time. In short, although the officer may have had grounds for *suspicion* that an illegal activity was taking place, he had nothing more. It is

questionable that he would even have had enough to support an affidavit for a search warrant, although we need not reach that point in this opinion. Since there was no probable cause to justify the seizure, we conclude that the seizure of the pipe was in violation of defendant's constitutional rights under the fourth amendment.

We next turn our attention to the question of what effect the illegal seizing of the pipe has upon the other evidence received by the police from defendant. After the officer seized the pipe, he confronted defendant with it and said that he, the officer, believed that there was marihuana in the car and that he thought the residue in the pipe would also be marihuana. The officer's testimony at this point is critical: "Now, I informed Mr. Davis of this and also advised him that *under the evidence which I had, I felt I had probable cause* to search his vehicle for marihuana or other narcotic devices and I advised him if he had anything in the car which he wished to turn over to me he could do so at that time." (Italics supplied.)

Thereafter, according to the officer, defendant went to his car and procured two containers of the substance the Commonwealth now says is marihuana which he handed to the officer. (Defendant's version of what transpired is somewhat different.) Query: Was the evidence subsequently obtained after the pipe was illegally seized tainted by the illegal seizure thereof under the so-called "derivative evidence" rule or "fruit from a poisonous tree" concept? Whatever can be traced to the original material is as inadmissible as the primary material itself: Wong Sun v. United States, 371 U.S. 471, 9 L. Ed. 3d 441 (1963). In the case now before us, the officer *said* that his "probable cause" was based upon the pipe. Therefore, if the basis of his probable cause was infirm, the subsequent mat-

ters based thereon would be infirm as well: Commonwealth v. Reece, 437 Pa. 422 (1970).

The Commonwealth's position, however, is that the marihuana packets were turned over voluntarily and, therefore, the derivative evidence rule does not apply. This is similar to the government's argument in Wong Sun v. United States, supra, that certain statements were admissible because they resulted from "an intervening independent act of free will," notwithstanding original taint. The Supreme Court of the United States said that the question in such a case is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint": Wong Sun v. United States, supra., 9 L. Ed. 2d 441, 455. It seems clear to us that defendant surrendered the cellophane packets because of the "exploitation" of the suspicious pipe by the officer.

Finally, the officer here may have saved himself from much of the problem which has now befallen him by waiting until the search warrant, which was in the process of being procured, had been actually obtained. While an overzealous officer cannot always be criticized, the results of his investigation must nevertheless stand up under constitutional safeguards or they must be excluded.

## CONCLUSIONS OF LAW

1. The smoking pipe with the screen inserted in the bowl was illegally seized.

2. The cellophane packets allegedly containing marihuana were obtained by exploiting the illegally seized evidence, to wit: the smoking pipe.

Accordingly, the following order will be entered.

## ORDER OF COURT

And now, March 27, 1972, the motion to suppress is granted. The pipe and cellophane packets seized by the Commonwealth are held to be inadmissible as evidence in the trial of the within cause.