**UNITED STATES of America**

v.

**Robert F. RICKUS, Dennis M. Nazarok.**

**Cr. No. 83–17.**

United States District Court,
E.D. Pennsylvania.

May 12, 1983.

---

Thomas H. Lee, II, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Lawrence J. Richette, Barbara Kauffman, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Presently before the Court are defendants' motions to suppress certain physical evidence seized by police from the defendants and from the automobile which the defendants were driving on the early morning of June 27, 1982. Also before the Court are the defendants' motions to suppress an alleged statement made by defendant Dennis Nazarok to police on the same date. Defendants contend that the subject matter of their suppression motions is the fruit of an illegal stop, arrest and search in violation of their Fourth Amendment right to be free of unreasonable searches and seizures. Our determination of the issues is based upon the suppression hearing testimony of Officer Thomas Halpin of the Northampton Township Police Department, the prior testimony of Officer Thomas Halpin at a preliminary hearing before a Pennsylvania Dis-

trict Justice, and certain stipulated facts as to the testimony of Sergeant Charles Quaste and Officer Edward Berwind, who assisted Officer Halpin on the morning in question.

The threshold issue concerns the legality of the stop itself. An improper stop would taint all evidence subsequently obtained and thus result in its suppression. *Wong Sun v. United States,* 371 U.S. 471, 485–486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963), *Mapp v. Ohio,* 367 U.S. 643, 659, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081 (1961). However, if the stop was proper, the Court must then determine whether probable cause existed for the subsequent arrest, search and seizure.[1] If the investigating officers were without probable cause at the time they arrested the defendants and searched the vehicle, all evidence obtained during the search must likewise be suppressed. *Wong Sun v. United States,* 371 U.S. at 485–486, 83 S.Ct. at 416 (1963); *Mapp v. Ohio,* 367 U.S. at 654, 81 S.Ct. at 1691 (1961).

The defendants contend that the law of Pennsylvania controls the resolution of this matter. Generally, the legality of a stop, arrest or search which is conducted by a state officer pursuant to state law must be determined under state law. *United States v. Di Re,* 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948); *United States v. Day,* 455 F.2d 454, 455 (3d Cir.1972). However, in a federal trial on federal offenses, the admissability of evidence obtained as a result of a search and seizure, is controlled by federal law.[2] This is true "even where the evidence has been obtained by state officers who may have violated state law". *United States v. Sotomayor,* 592 F.2d 1219, 1223 (2nd Cir.1979). As long as the evidence was lawfully obtained under federal law, it is admissible in federal court. *United States v. Armocida,* 515 F.2d 49, 52 (3d Cir.1975). An exception to this rule arises where a state court, interpreting the state constitution, imposes greater restrictions on police activity than those imposed by the United States Supreme Court under a parallel provision of the United States Constitution. *Oregon v. Haas,* 420 U.S. 714, 719–720, 95 S.Ct. 1215, 1219–1220, 43 L.Ed.2d 570 (1975); *United States v. Bedford,* 519 F.2d 650, 654 n. 3 (3d Cir.1975). Under these circumstances, the state court's interpretation of its constitution is binding on the federal court.[3]

We initially direct our attention to the legality of the stop. In view of the "practical necessities of effective law enforcement"[4], it is well established that

[a] brief stop of a suspicious individual, in order to determine his identity or maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Such limited intrusions are justified even though the investigating officer is, at that moment, without probable cause to arrest. *Id.* at 145, 92 S.Ct. at 1922; *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20

---

1. The term "seizure" is used here in its literal sense, *i.e.,* an actual taking of physical evidence. We recognize that even a limited stop and/or detention of an individual is a "seizure" within the meaning of the Fourth Amendment. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878–81, 95 S.Ct. 2574, 2578–80, 45 L.Ed.2d 607 (1973).

2. *Preston v. United States,* 376 U.S. 364, 366, 84 S.Ct. 881, 882, 11 L.Ed.2d 777 (1964); *Rios v. United States,* 364 U.S. 253, 255 and 261, 80 S.Ct. 1431, 1433 and 1436, 4 L.Ed.2d 1688 (1960); *United States v. Sotomayor,* 592 F.2d 1219, 1223 (2nd Cir.1979); *United States v. Bedford,* 519 F.2d 650, 654 (3d Cir.1975), *cert.*

denied, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976); *United States v. Armocida,* 515 F.2d 49, 52 (3d Cir.1975), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975); *United States v. Geller,* 560 F.Supp. 1309 at 1312 (E.D. Pa.1983).

3. However, "a federal court is not bound by a state court's interpretation of federal laws or of a state statute under misapprehension of federal law". *United States v. Bedford,* 519 F.2d 650, 654, n. 3 (3d Cir.1975).

4. *United States v. Holland,* 510 F.2d 453, 455 (9th Cir.1975), quoting *Wilson v. Porter,* 361 F.2d 412, 415 (9th Cir.1966).

L.Ed.2d 889 (1968). This may be particularly true where the suspect is travelling by automobile. A motorist's extreme mobility would otherwise enable him to avoid confrontation by police.[5] Nonetheless, a police officer may not conduct a so-called investigatory stop absent specific and articulable facts which, taken together with rational inferences drawn therefrom, create a reasonable suspicion that the motorist is engaged in criminal activity. *Adams v. Williams,* 407 U.S. at 148, 92 S.Ct. at 1924; *Terry v. Ohio,* 392 U.S. at 21, 88 S.Ct. at 1879.

The facts surrounding the instant stop are as follows: Early in the morning of June 27, 1982, Officer Thomas Halpin was sitting in his patrol car in a parking lot near Second Street Pike in the business district of Richboro, Pennsylvania. He twice observed within a thirty minute span what he believed to be the same black and gold Buick. At the time of the second sighting, the Buick was travelling at an extremely slow speed through the then closed commercial district. Suspicions aroused, the officer followed the vehicle through the commercial district and into a nearby residential area. Knowing that the neighborhood had recently been victimized by perhaps as many as twelve unsolved late night or early morning burglaries, he called for assistance in following the car. Sergeant Charles Quaste and Officer Edward Berwind, who were patrolling nearby in an unmarked police car, responded to the call. Both police cars followed the Buick through the residential area for several minutes. During that time, the car continued to travel at a slow rate of speed and, at one point, stopped momentarily in front of a residence. Finally, when the car made a legal U-turn to return toward the direction from which it came, Officer Halpin pulled in front of the car and stopped it. Sergeant Quaste and Officer Berwind continued on in their vehicle.

We confine our consideration of the legality of the stop to the above facts. Subsequent events are not relevant to this determination. *See e.g., United States v. Harris,* 482 F.2d 1115, 1117 (3d Cir.1973). Defendants argue that the stop was improper because the information known to Officer Halpin at the time was insufficient to justify an investigatory stop. More particularly, they contend that the officer can point to no specific and articulable facts from which he could rationally infer, based upon his experience, that criminal activity was afoot. We disagree.

A police officer who, at a given point in time, lacks probable cause to arrest suspicious individuals is not required by the Fourth Amendment "to simply shrug his shoulders and allow a crime to occur or a criminal to escape". To the contrary, a police officer may be delinquent in his duty if, under the appropriate circumstances, he refrains from briefly stopping and questioning such individuals as to their identifies and suspicious behavior. *Adams v. Williams,* 407 U.S. at 145–46, 92 S.Ct. at 1922–1923; *United States v. Hensel,* 509 F.Supp. 1376, 1387 (D.C.Me.1981), *aff'd mem.,* 699 F.2d 18 (1st Cir.1983). In considering a similar factual issue the Ninth Circuit held that

> [police] officers were not required to rule out all possibility of innocent behavior before initiating a brief stop and request for identification. The test is founded suspicion, not probable cause. Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, police officers must be permitted to act *before* their belief is verified by escape or fruition of the harm it was their duty to prevent. (emphasis in original).

*United States v. Holland,* 510 F.2d 453, 455 (9th Cir.1975). In view of the foregoing, we conclude that the officer's experience,

---

**5.** A similar rationale has long been recognized with respect to warrantless searches of automobiles. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 419 (1970); *See, Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414, 418 (1975) (applying the "automobile exception" to an investigatory stop).

coupled with his knowledge of recent unsolved burglaries in this particular residential area and his observation of a vehicle being driven in an extremely suspicious manner through that area provided the constitutionally required foundation for an investigatory stop. Therefore, we hold that the stop of the defendants' vehicle was legal.

Following the stop, Officer Halpin approached the Buick. Its driver, defendant Dennis Nazarok, exited and met the patrolman a few steps from it. Nazarok was unable to produce any identification, so the officer inquired as to the car's ownership. Nazarok returned to the Buick to search the glove compartment for a registration card; meanwhile, from outside the vehicle, Officer Halpin observed a screwdriver and pliers on the rear floor. He also saw some maps and a flashlight on the front seat. While Nazarok was searching through the glove compartment, the patrolman asked the passenger, defendant Robert Rickus, for identification. Initially, Rickus did not respond, but, following a second request, he too stated he had no identification with him. At or about this time, Sergeant Quaste and Officer Berwind returned to the scene. Nazarok got back out of the car, produced a no-fault insurance card in the name of Bernadette Nazarok of Roslyn, Pa., and identified himself as Dennis Nazarok. Officer Halpin asked the passenger to get out of the car also. He eventually got out and identified himself as Bob Rickus of Philadelphia. Rickus was standing near the rear fender of the Buick and twice was seen backing away from the car. On both occasions one of the assisting officers asked that he move back to the vehicle. Officer Halpin asked the defendants where they had been and both replied that they had been drinking at several bars. However, neither could recall the name of any of the bars at which they had stopped. Significantly, the officer could detect no odor of alcohol on Nazarok's breath even though he was standing only one to two feet away. Additionally, both defendants responded to questions from the officer in a stilted fashion and repeatedly glanced at each other as if to check the propriety of each answer.

While questioning the defendants, Officer Halpin noticed a bulge in the area of Nazarok's jacket pocket. He could not tell whether the bulge was being caused by something in the pocket or underneath the jacket. Halpin also observed what appeared to be the top part of a bullet-proof vest protruding approximately one and a half inches above Nazarok's jacket. He thereupon asked Nazarok to remove his jacket. At or about the same time, Berwind drew his gun and pointed it toward the defendants. Following several requests, Nazarok removed his jacket and revealed a full upper-body bullet-proof vest. Then Rickus was asked to remove his sweater. He eventually complied and also revealed a full upper-body bullet-proof vest. At that point, both men were asked to face the Buick and place their hands on it while they were patted down. In the meantime, Sergeant Quaste began a search of the car's interior which uncovered a flashlight, a screwdriver, pliers, three maps, a hunting knife, brown work gloves and a long copper rod. He also discovered two pairs of surgical gloves in the pocket of Nazarok's jacket which had been handed to him. Following the "pat down" the defendants were asked why they were wearing bullet-proof vests. Nazarok responded that they "were going to hit a drug dealer but the deal went sour." Immediately thereafter, Quaste removed the keys from the ignition and searched the trunk. Upon opening the trunk he announced that a .22 caliber semi-automatic pistol was in full view atop a duffle bag. Its serial number had been obliterated. Additionally, he found a full mask resembling Leonid Brezhnev inside the duffle bag.

Nazarok and Rickus were placed under arrest and subsequently charged with possession of instruments of a crime, *i.e.*, burglar tools, obliterating the serial number on a firearm, unlawful possession of a firearm without a license, and criminal conspiracy.[6]

<hr/>

6. Having previously been convicted of unspeci-        fied felonies, defendants are here charged with

Given the legality of the stop, defendants next attack the validity of their arrest as being unsupported by probable cause. Further, defendants argue that the only violation attributable to either of them was a summary offense under the Pennsylvania Vehicle Code, *i.e.,* the failure of defendant Nazarok to have a driver's license with him. Since Pennsylvania courts purportedly do not permit an arrest or search for such an offense, defendants maintain that all evidence seized by the officers must be suppressed.

█ We do not agree that a motor vehicle code violation formed the sole basis for the arrest. The evidence clearly establishes that independent probable cause to arrest the defendants arose during the course of the investigatory stop.[7]

Following the investigatory stop, information developed rapidly until ultimately providing the officers with a reasonable basis to believe a crime was in progress. Neither defendant could produce any identification or indicia of ownership of the automobile. Officer Halpin observed from outside the vehicle a screwdriver and pliers on its rear floor as well as maps and a flashlight on its front seat, all in plain view. Recognizing the potential use of these instruments in a burglary, he asked the defendants what they were doing. Although both men stated that they had visited several bars in the area, neither could recall the name of a single establishment to which they had been. Additionally, no odor of alcohol could be detected on the breath of Nazarok, who stood only one to two feet from Officer Halpin. Further arousing the officers' suspicions were the continual furtive glances between the defendants, their stilted speech patterns and the apparent attempt of defendant Rickus to twice leave the scene. The observance of a bulge in Nazarok's jacket pocket as well as a portion of a bullet-proof vest protruding above the jacket led to the discovery that both de-

fendants were wearing full upper-body bullet-proof vests.

At that point, the information known to the officers was sufficient to establish probable cause to believe criminal activity, *i.e.,* a burglary, was in progress. Courts have long recognized that investigating officers need not be armed with evidence sufficient to prove guilt in a court of law before effecting a legal arrest and search. *Adams v. Williams,* 407 U.S. at 149, 92 S.Ct. at 1924 (1972); *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Probable cause exists if the facts known to the officers and the circumstances with which they are faced would warrant a prudent man in believing that the suspected offense had been or was in the process of being committed. *Henry v. United States,* 361 U.S. at 102, 80 S.Ct. at 171; *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *Zadroga v. City of Philadelphia,* No. 81–1174 slip op. at 5 (E.D.Pa. March 30, 1983). Since such a belief was clearly warranted in the instant case, the defendants' arrest was legal.

Defendants further contend that the alleged statement concerning the hitting of a drug dealer made by defendant Nazarok must be suppressed because it was obtained without his first being informed of his constitutional rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). More particularly, they argue that the interrogation of Nazarok was custodial in nature because it followed a pat-down search and was being conducted at gunpoint. Therefore, defendants argue that the investigating officers had a duty to warn Nazarok of his rights before proceeding.

█ Since the defendants were being properly detained pursuant to a *Terry* stop and had not been formally arrested at the time of the alleged statement, the Govern-

---

"possession of a firearm by a convicted felon". 18 U.S.C.App. § 1202(a)(1). Prosecution of the above mentioned state charges was dropped.

7. *Chambers v. Maroney,* 399 U.S. 42, 47, 49–52, 90 S.Ct. 1975, 1979, 1980–1981, 26 L.Ed.2d 419 (1970); *United States v. Milhollan,* 599 F.2d 518, 526 (3d Cir.1979); *United States v. Vento,* 533 F.2d 838, 866 (3d Cir.1976).

ment maintains that *Miranda* warnings were not then required. Moreover, it contends that Officer Berwind's drawing of his gun during the course of the stop was reasonable under the circumstances as a precautionary measure and, therefore, insufficient to transform the stop into an arrest.[8]

An individual need not have been formally arrested before his interrogation by police officers is deemed custodial in nature. *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612 (1966). The test is more properly whether the interrogation, initiated by law enforcement officers, is conducted in a manner that deprives the questioned individual in any significant way of his freedom to act. *Id.*

In the case at bar, the circumstances under which the statement was obtained went well beyond the limited detention and questioning envisioned by *Terry.*[9] We previously found that the statement came at a time after the investigating officers had probable cause sufficient to arrest the defendants. Additionally, the defendants already had been spread-eagled against the Buick and patted down by one officer while an assisting officer held a gun on them. Hence, the defendants were clearly the focus of a police investigation and, more importantly, greatly restricted with respect to their freedom of action. For these reasons,

we find that the interrogation which led to defendant Nazarok's alleged statement was custodial in nature and thus required the investigating officers to inform him of his rights prior to proceeding with questioning. Therefore, the alleged statement must be suppressed.

Lastly, defendants challenge the warrantless search of the vehicle's trunk as having been conducted without independent probable cause and as having exceeded the permissible scope of a search incident to an arrest. Accordingly, they seek to suppress all evidence obtained thereby.

The Government, strenuously opposing suppression, argues that the information known to the officers at the time of the search was sufficient to provide them with probable cause to believe that the car contained evidence of crime, *i.e.,* additional burglar tools. Furthermore, it contends that under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), a police officer armed with probable cause to search any part of a vehicle may lawfully search every part of that vehicle. Hence, the Government maintains that the search of the trunk was legal, and the evidence found therein should not be suppressed.

Because the law of Pennsylvania controls this issue, *Ross* is not dispositive.[10] This

---

**8.** The Government cites *United States v. Thompson,* 558 F.2d 522, 524 (9th Cir.1977), in support of this proposition. In *Thompson,* the court permitted the drawing of a gun by an officer to accomplish the initial stop itself where it was apparent to the officer that the individual in question would not otherwise comply with his request. Here, a forcible stop was not required because the defendants were cooperative. Thus, the facts of the *Thompson* case are clearly distinguishable from those of the case at bar. Nonetheless, there is some support for the position that the drawing of a gun by a police officer under circumstances suggesting fear for his personal safety does not transform a *Terry* stop into an arrest. *United States v. Ramos-Zaragosa,* 516 F.2d 141, 144 (9th Cir.1975). This, of course, must be borne out by the facts of the particular case. In the instant matter, Officer Berwind was justified in drawing his gun at the time that the bulge and bullet-proof vest were first seen because it was not unreasonable for him to believe the defend-

ants were armed. However, once it was determined that the defendants were unarmed, the continued show of force by Officer Berwind amounted to an arrest. The officers could no longer point to circumstances supporting fears for their personal safety or conduct on the part of the defendants which justified the use of force. *United States v. Beck,* 598 F.2d 497, 501 (9th Cir.1979).

**9.** *See, Florida v. Royer,* —— U.S. ——, —— ————, 103 S.Ct. 1319, 1324–26, 75 L.Ed.2d 229 (1983).

**10.** The Pennsylvania Supreme Court has chosen, on occasion, to be more protective of individual rights than has the United States Supreme Court. *United States v. Geller,* 560 F.Supp. 1309 at 1314–1315 (E.D.Pa.1983). In this instance, it has done so by interpreting Article I, § 8 of the Pennsylvania Constitution which is analogous to the Fourth Amendment to the United States Constitution. Such deci-

precise issue was addressed by the Supreme Court of Pennsylvania in *Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113 (1980). In *Long,* the Court found a warrantless search of a locked automobile trunk to be violative of the right to be free of unreasonable searches and seizures under Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.[11] *Id.* 414 A.2d at 117. In reaching its conclusion, the Court opined that the existence of probable cause sufficient to search the passenger section of a car does not automatically justify a search of its trunk. *Commonwealth v. Long,* 414 A.2d at 116. The Court held that

> [i]n reviewing the validity of a warrantless automobile search it must be recognized that the open areas of a car differ from the locked trunk, where the owner of the vehicle manifests a greater expectation of privacy.

414 A.2d at 116. This ruling placed a theretofore non-existent gloss on the standard by which warrantless searches of vehicles are measured. That standard, established in *Commonwealth v. Dussell,* 439 Pa. 392, 266 A.2d 659 (Pa.1970), delineates the limited circumstances under which police officers can effect such searches. The *Dussell* Court held that before conducting warrantless searches of moving vehicles

> officers must have independent probable cause to believe that a felony has been committed, and must have a basis for believing either that evidence of a crime is concealed in the vehicle or that there are weapons therein accessible to occupants of the car.

*Id.* 266 A.2d at 661; *Dyke v. Taylor,* 391 U.S. 216, 221, 88 S.Ct. 1472, 1475, 20 L.Ed.2d 538 (1967); *United States v. Chabot,* 531 F.Supp. 1063, 1068 (D.V.I.1982).

Although *Long* reaffirms this general rule [12], it *additionally* creates distinctions among areas within a motor vehicle as to the quantum of probable cause required before valid warrantless searches thereof can be made. *Commonwealth v. Long,* 414 A.2d at 116.

Applying *Long* and *Dussell* to the facts of the case at bar, we are not convinced that the police officers had sufficient probable cause to conduct a warrantless search of the Buick's locked trunk. Having found that the officers had probable cause to arrest the defendants on the belief that a burglary was either in progress or about to be committed, the officers were certainly entitled to conduct a search incident to that arrest. However, such searches are primarily for the officers' protection or to prevent the destruction of evidence and, therefore, are limited to the areas immediately accessible to the arrested individuals. *Florida v. Royer,* — U.S. —, —, 103 S.Ct. 1319, 1321, 75 L.Ed.2d 229 (1983); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Commonwealth v. Long,* 489 Pa. 369, 414 A.2d 113, 115 (1980). Additionally, the defendants were well under the control of the arresting officers since they had been patted down and were being held at gunpoint. Thus, their access to the locked trunk was foreclosed. For these reasons, the warrantless search of the trunk by the officers cannot be justified as

---

sions by the state's highest court are binding on federal courts. (*See,* discussion at p. 98, *supra.*) Although the Pennsylvania Superior Court has cited *Ross* approvingly, *Commonwealth v. Duell,* — Pa.Super. —, 451 A.2d 724, 725 (1982), the most recent pronouncement by the Pennsylvania Supreme Court controls. *United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). Therefore, no matter how persuasive we find the *Ross* rationale to be, "we cannot simply *presume* that the highest court of a sovereign state will modify its interpretation of its own [constitutional] law whenever [federal courts] interpret comparable federal [constitutional] law differently." (emphasis in original) *South Dakota v. Neville,* —

U.S. —, —, 103 S.Ct. 916, 925, 74 L.Ed.2d 748 (1983) (Stevens, J.; dissenting).

**11.** Where a state court's holding is based on both State Constitutional and Federal Constitutional grounds, it is viewed as having been decided on state grounds unless otherwise clearly indicated by the court. *See, Mental Hygiene Dept. v. Kirchner,* 380 U.S. 194, 198, 85 S.Ct. 871, 874, 13 L.Ed.2d 753 (1965).

**12.** The standard in *Dussell* was again reaffirmed in *Commonwealth v. Timko,* 491 Pa. 32, 417 A.2d 620, 623 (1980).

**104**

incident to the arrest.[13] *Long, supra,* 414 A.2d at 115. Therefore, given probable cause to believe a felony was in progress or about to be committed, the officers additionally needed a basis for believing that evidence of a crime was being concealed within the trunk before conducting a warrantless search of it. *Commonwealth v. Dussell,* 266 A.2d at 661.

The evidence shows that, during the course of the stop, Officer Halpin observed in plain view instruments commonly used in burglaries in the passenger section of the car. This in conjunction with all other information obtained by the officers was sufficient to provide them with probable cause to believe that additional evidence of crime might be found within the vehicle's passenger section. Thus, the warrantless search of the Buick's passenger area was justified.[14] To the contrary, this record is without facts sufficient to support a reasonable belief that additional evidence of a crime would be found in the car's trunk. Sergeant Quaste's decision to enter the locked trunk was predicated upon Nazarok's statement that they intended to hit a drug dealer. Since we have already held that the statement must be suppressed, it cannot be considered in determining probable cause to search the trunk. However, even if it were not suppressed, it could support no more than speculation on the part of the officers that some type of weapon might be found somewhere in the car. It is well established that mere suspicion or good faith is not sufficient to permit a warrantless search. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948). Moreover, the fruits of an illegal search cannot be used to justify it. *Henry v. United States,* 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Commonwealth v. Dussell,* 439 Pa. 392, 266 A.2d

659, 661 (1970). In addition, *Long* requires officers to have a greater level of probable cause to make a warrantless search of a vehicle's trunk than is needed to search the vehicle's open areas. For all of these reasons, we conclude the search was illegal. Therefore, all evidence obtained through the warrantless search of the vehicle's trunk must be suppressed.

An appropriate order will follow.

---

**13.** Nor can the warrantless search of the trunk be justified by the "accessible weapons" prong of the *Dussell* standard (*See* discussion p. 103, *supra.*) which adopts the same test as is used for searches incident to an arrest. *Commonwealth v. Dussell,* 266 A.2d at 661.

**14.** Consistent with our earlier discussion, the search of the vehicle's passenger section also would have been justified as incident to the arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Since the passenger area was potentially accessible to the defendants, independent probable cause to search it was not required.