621 A.2d 589

**COMMONWEALTH of Pennsylvania**

v.

**John E. GERMANN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 19, 1992.

Filed Jan. 15, 1993.

Reargument Denied March 30, 1993.

Robert F. Pappano, Asst. Public Defender, Brookhaven, for appellant.

Louis G. Stesis, Asst. Dist. Atty., Media, for Com.

Before OLSZEWSKI, BECK and KELLY, JJ.

OLSZEWSKI, Judge:

John Germann appeals from the judgment of sentence entered against him in the Court of Common Pleas of Delaware County following his conviction for possession of a controlled substance,[1] possession of drug paraphernalia,[2] operation of a vehicle without inspection,[3] and violation of the use

1. 35 Pa.S.A. § 780–113(a)(16)
2. 35 Pa.S.A. § 780–113(a)(32)
3. 75 Pa.C.S.A. § 4703

of a certificate of inspection.[4] Germann was sentenced on February 13, 1992, to imprisonment of 30 days to 6 months on the possession conviction and a consecutive 12 months' probation on the drug paraphernalia conviction. On appeal, Germann contends that the trial court erred in denying his motion to suppress physical evidence. We agree, and find that evidence seized during a search of Germann's vehicle should have been suppressed as the product of an illegal search and seizure.

The facts adduced by the trial court are supported by the record, and we adopt those findings here:

On March 29, 1991, at approximately 8:15 a.m. Officer Matthew Egan of the Media Police Department was on routine patrol in the area of State Street and Providence Road. (N.T. 10/29/91, at 2–3.) While on patrol, Officer Egan observed the defendant, John Germann, operating a gray Datsun 280Z automobile that was in poor condition and with what appeared to be false or fraudulent inspection stickers. (N.T. 10/29/91, at 2–3.)

Officer Egan turned on his overhead flashing lights and pulled the Defendant over in the 200 block of East State Street in order to view the inspection sticker. Upon further visual examination, Officer Egan determined that both the state inspection sticker and the state emission sticker were fraudulent and therefore illegal. (N.T. 10/29/91, at 10–13.) At that point, Officer Egan asked the defendant for his operators license [sic] and registration. (N.T. 10/29/91, at 10.) The defendant gave Officer Egan his documents after which the defendant was asked to step from the vehicle. (N.T. 10/29/91, at 12.)

Officer Egan conducted a search of the Defendant's vehicle that yielded two more illegal inspection stickers, Topps, [sic] rolling papers and multiple glassine baggies, one of which contained a white powder suspected to be cocaine. (N.T. 10/29/91, at 15–17.) It was later determined that the substance contained in the baggie was indeed cocaine. (N.T. 10/29/91, at 18.) The defendant was placed under

4. 75 Pa.C.S.A. § 4730

arrest and his vehicle was towed. Prior to towing the vehicle, and pursuant to a normal procedure of the Media Police Department, an inventory search of the vehicle was conducted by Officer Egan. (N.T. 10/29/91, at 22–23.) This inventory search did not reveal anything of note. (N.T. 10/29/91, at 23.)

Trial court opinion, at 1–2.

Following the preliminary hearing and arraignment, Germann filed a motion to suppress and a hearing was held on October 29, 1991, before the Honorable Anthony R. Semeraro. Germann claimed that the search conducted by Officer Egan was impermissible as it was not incident to a valid arrest and was not supported by probable cause. Judge Semeraro ruled that the evidence was admissible. A trial was held and Germann was convicted. Post-trial motions were denied. This appeal followed.

■ Germann does not challenge the trial court's finding that his vehicle was lawfully stopped for displaying a fraudulent inspection sticker in violation of 75 Pa.C.S.A. § 4703 of the Motor Vehicle Code. Accordingly, the issues presented for our review are: (1) whether the search of Germann's automobile was justifiable as an automobile search based on probable cause; or, (2) whether the evidence seized would inevitably have been discovered pursuant to a valid inventory search. Initially, we note that the our role in reviewing an order granting or denying a motion to suppress is:

> to determine whether the record supports (1) the suppression court's findings, and (2) the legitimacy of the inferences and legal conclusions drawn from those findings ... [w]hen the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Martinson,* 368 Pa.Super. 130, 533 A.2d 750 (1987) (citations omitted).

■ In denying Germann's motion to suppress evidence, the trial court first determined that probable cause existed to

justify the search of Germann's vehicle. While searches and seizures conducted in the absence of a warrant are generally considered unreasonable under the Fourth Amendment, the trial court noted that "there is an established departure from the warrant requirement for certain automobile searches." Trial court opinion, at 6. This departure is based on the practical problems in obtaining a warrant associated with the inherent mobility of the automobile, and on the diminished expectation of privacy relating to their open construction, their function, and their subjection to state regulation. *Id.* We note, however, that our Supreme Court has warned that "the general requirement that a warrant be obtained is not lightly to be dispensed with, and the burden is on those seeking an exemption from the requirement to show a need for it." *Commonwealth v. Dussell,* 439 Pa. 392, 266 A.2d 659 (1970) (*quoting Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

Our courts have sanctioned the warrantless search of a vehicle, stopped for an ordinary traffic offense, only in those cases where independent probable cause was established to justify the search. We have persistently admonished, however, that stopping an automobile or arresting a driver for an ordinary traffic offense, does not, without more, permit a warrantless search of the vehicle. *Dussell, supra; Commonwealth v. Trunzo,* 404 Pa.Super. 15, 589 A.2d 1147 (1991). The validity of a warrantless automobile search incident to a summary offense depends on the reasonable cause the seizing officer has to believe that the contents of the automobile offend the law; not the right to arrest. *Commonwealth v. Lewis,* 442 Pa. 98, 275 A.2d 51 (1971); *Commonwealth v. Bailey,* 376 Pa.Super. 291, 545 A.2d 942 (1988) (collecting cases).

> To justify [a warrantless] search, even though a movable vehicle is involved, an officer must have *independent probable cause* to believe that felony has been committed by the occupants of the vehicle, or that it has been used in the furtherance of the commission of a felony, or the officer must have a basis for believing that evidence of a crime is

concealed within the vehicle, or that there are weapons therein which are accessible to the occupants.

*Bailey,* at 300, 545 A.2d at 947 (citations omitted) (emphasis added). The evidence required to establish "probable cause" must be more than a mere suspicion or good faith on the part of the police officer. *Dussell,* 439 Pa. at 396, 266 A.2d at 662 (*citing Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)).

In *Bailey,* we sanctioned the warrantless search of a vehicle after the driver had been stopped for violating the speed limit. As appellant reached for identification from his pocket, the officer observed a clear plastic bag containing a white substance which the officer believed to be a controlled substance. This observation, coupled with the fact that the officer detected a "chemical-type" smell, established probable cause to search the passenger area and trunk. *Bailey* at 296, 545 A.2d at 945; *see also Commonwealth v. Leet,* 401 Pa.Super. 490, 585 A.2d 1033 (1991) (probable cause to search vehicle stopped for motor vehicle violation arose after police detected odor of marijuana and beer emanating from defendant's vehicle); *Commonwealth v. Stoner,* 236 Pa.Super. 161, 344 A.2d 633 (1975) (probable cause to search vehicle stopped for routine traffic violation arose after police observed marijuana seeds and leaves inside the vehicle).

In *Trunzo, supra,* we concluded that the officer had probable cause to search the defendant's trunk for alcohol, following defendant's arrest for underage drinking. We found that the officer had reason to believe that evidence of a crime was concealed within the vehicle after his initial investigation yielded that defendant was nineteen years old, had the smell of alcohol on his breath, and was standing at the open door of the driver's side of the vehicle. Moreover, the officer had received several complaints of underage drinking at the inn where the defendant was located and was responding to a call from a constable reporting that there was a problem.

Applying the standard enunciated in these cases to the present case, we conclude that the trial court erred in finding that there was independent probable cause for police to search

Germann's vehicle after stopping him for an ordinary traffic violation. The trial court predicated its probable cause finding upon Officer Egan's observation that the fraudulent stickers discovered on Germann's vehicle purported to expire that month, and that the vehicle was in very poor condition. (N.T., 10/29/91, at 7–18.) Officer Egan concluded that the vehicle would therefore be unable to pass a valid inspection. *Id.* Accordingly, Egan surmised that additional fictitious inspection stickers would have to be affixed to the car's windshield within a matter of days and it was likely that these stickers would be inside Germann's vehicle. *Id.*

In support of its finding that Officer Egan had independent probable cause to search Germann's vehicle, the trial court relied on *Commonwealth v. Duell*, 305 Pa.Super. 431, 451 A.2d 724 (1982). In *Duell*, police stopped defendant for making an illegal turn. As defendant rolled down his window, the officer detected a strong odor of marijuana in addition to observing an open bottle of wine on the floor of the car. These observations clearly provided the officer with probable cause to believe that the vehicle contained contraband, and thus we held that the search was justifiable. *Id.* at 725. The trial court concluded that the facts in the present case, as in *Duell*, "when viewed in the totality of the circumstances, [would] warrant a man of reasonable caution to believe that contraband, in the form of additional illegal inspection [sic], is contained in the car." Trial court opinion, at 8.

We reject the trial court's conclusion that *Duell* is analogous to the present case. The conclusions drawn by Officer Egan from the poor condition of Germann's vehicle and the impending expiration of the fraudulent sticker amounted to no more than a mere hunch or suspicion that additional stickers would be found inside the car. This is precisely the type of intrusion our courts have sought to avoid in preserving the individual's expectation of privacy. *Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972); *Lewis, supra; Duell, supra.* To hold otherwise would engender too great a departure from the protections afforded our citizens in the privacy of their auto-

mobiles than is provided by our state and federal constitutions.

■ We now turn to the trial court's holding that the evidence is admissible because it would have inevitably been discovered. The trial court held that even if the initial search was not based upon probable cause, a lawful inventory search would have resulted in the ultimate seizure of the evidence. This conclusion was based upon Officer Egan's testimony that it is the policy of the Media Police Department to conduct inventory searches of automobiles before they are towed. (N.T., 10/29/91, at 36–37.) Police towing was purportedly necessary in this case because Germann's vehicle was in violation of 75 Pa.C.S.A. § 4703(a).[5] The trial court thus held that, "[i]t does not take a great leap of faith or logic to come to the conclusion that Officer Egan would not have allowed the defendant to continue to operate the vehicle and instead would have had the vehicle towed to the police station." Trial court opinion, at 11.

Bearing in mind that Germann was originally stopped for a summary traffic offense,[6] we do not agree that Germann's vehicle would have inevitably been subject to a lawful inventory search. The trial court's opinion failed to consider the threshold issue of whether police towing of Germann's vehicle was warranted under the circumstances. We find that prior

5. Section 4703(a) provides:
 (a) **General Rule.**—Except as otherwise provided in this section, no motor vehicle required to bear current registration plates issued by this Commonwealth shall be moved on a highway ... unless the vehicle displays a currently valid certificate of inspection issued under this chapter.

6. Section 4703(h) provides:
 **Penalty.**—Any person violating this section is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of up to $25.
 Section 4730(c), governing violations of the use of certificate of inspection, provides:
 **Penalty.**—A violation of the provisions of this section constitutes a summary offense punishable:
 (1) For a first offense, by a fine of $100.
 (2) For a subsequent offense, by a fine of not less than $200 nor more than $500 [...]

to Germann's arrest for the seized evidence at issue, police towing would not have been justified. Section 3352 of the Motor Vehicle Code provides:

### § 3352 Removal of vehicle by or at direction of police

Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:

(1) Report has been made that the vehicle has been stolen or taken without consent of its owner.

(2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

(3) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay [. . .]

(4) The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.

(5) The vehicle has been abandoned as defined in this title.

75 Pa.C.S.A. The facts of this case simply do not fall within the enumerated circumstances under § 3352. Because Germann would only have been issued a summary citation, he was available to provide for the custody and removal of the vehicle.

■ Even assuming that towing would have been consistent with police protocol in this instance, we do not believe that a complete search of Germann's vehicle would have been congruous with our principles of a valid inventory search. It is well established that a valid inventory search is not designed to uncover evidence of a crime. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman,* the Supreme Court established that an inventory search is only excepted from the warrant requirement or probable cause where it is motivated by a desire to safeguard

the contents of the vehicle,[7] and not by a design to uncover incriminating evidence. *Id.* at 374–375, 96 S.Ct. at 3099–3100.

Following *Opperman,* we established that two factors must be present in order to justify the reasonableness of an inventory search in the absence of probable cause. *Commonwealth v. Brandt,* 244 Pa.Super. 154, 366 A.2d 1238 (1976). The Commonwealth must show: (1) that the vehicle in question was lawfully within the custody of the police, and (2) that the search was in fact an inventory search pursuant to the objectives laid down in *Opperman.* As we explained:

> The hearing judge must be convinced that the police intrusion into the automobile was for the purpose of taking an inventory of the car and not for the purpose of gathering incriminating evidence. The facts and circumstances which must be considered by the hearing judge are the scope of the search, the procedure utilized in the search, whether any items of value were in plain view, the reasons and nature of the custody; the anticipated length of custody, and any other factors which the court deems important in its determination. If, after weighing all the facts and circumstances, the court is of the opinion that it was an inventory search of an automobile lawfully in police custody, then any evidence seized as a result of this reasonable inventory is admissible. If on the other hand, the Commonwealth has not shown that the search was part of the police caretaking function, the probable cause-warrant standard must be used for determining reasonableness.

*Brandt,* 244 Pa.Super. at 161, 366 A.2d at 1242 (citations omitted); *see also Commonwealth v. Anderl,* 329 Pa.Super. 69, 477 A.2d 1356 (1984).

 It is clear in this case that the items were not discovered during an inventory search since Officer Egan's motivation was to uncover additional fraudulent validation

---

7. The non-investigative function of inventory searches "developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, ... the protection [of] police against claims or disputes over lost or stolen property, and the protection of the police from potential danger ..." *Opperman,* 428 U.S. at 378, 96 S.Ct. at 3101 (Powell, J., concurring).

stickers. (N.T., 10/29/91, at 36.) Considering the totality of the circumstances as set forth in *Brandt,* we also find that the purpose of the eventual inventory search would have exceeded the permissible caretaking function given the facts that existed prior to Germann's arrest. In *United States v. Abbott,* 584 F.Supp. 442 (W.D.Pa.1984), the court thoroughly evaluated the proper scope of an inventory search. The court noted that "motive" is the sole factor which distinguishes a criminal investigatory search from a noncriminal inventory search of an automobile. A questionable impoundment is one factor of circumstantial evidence of an improper motive. *Id.* Moreover, the inquiry into motive does not end once a finding of lawful police custody has been made "[f]or the facts and circumstances surrounding a lawful impoundment can still lead to the conclusion that an inventory search was motivated by an improper purpose." *Id.* at 448. Here, Germann was stopped for a summary offense; there is no evidence that any valuable items were in plain view; the vehicle was in poor condition; the reason for the custody was merely to remove it from the highway; and the police removal was not mandated by law. Considering these factors, we conclude that a less intrusive method of protection than a full scale search of the car would have adequately fulfilled the care-taking function. We adopt the reasoning in *Abbott, supra,* which sets forth:

> Logically, since an inventory search is to protect the owner's property, the owner, whenever available, should be given the opportunity to determine how he wants his property secured. The Supreme Court has implicitly embraced this view:
>
>> that it should be only in the atypical case that police officers would find it necessary to conduct a general inventory search of an impounded vehicle. The owner of the property may be able to take reasonable steps to safeguard his property at the time of arrest, thus obviating the necessity of impoundment. It is only reasonable that the owner be allowed to choose whether or not he wishes his car impounded. In cases where the owner or operator cannot make his wishes known ... the property

would be adequately safeguarded by rolling up the windows and locking the doors, subject of course, to reasonable steps to safeguard property in plain view within the automobile.

*Abbott,* 584 F.Supp. at 448 (*citing United States v. Lawson,* 487 F.2d 468, 477 (8th Cir.1973); *Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100). Having determined that Germann's vehicle would not have been properly impounded and searched prior to his arrest, we reject the Commonwealth's assertion of the inevitable discovery doctrine.

For the reasons stated in this opinion, the judgment of sentence for the possession of a controlled substance and possession of drug paraphernalia is vacated and remanded for a new trial. Jurisdiction is relinquished.