533 A.2d 750

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Eric MARTINSON, Appellee.**

Superior Court of Pennsylvania.

Argued March 12, 1987.

Filed Nov. 9, 1987.

---

132

Frances G. Gerson, Assistant District Attorney, Philadelphia, for Com., appellant.

John G. McDougall, Philadelphia, for appellee.

Before CIRILLO, President Judge *, and McEWEN and MONTEMURO, JJ.

McEWEN, Judge:

■ The Commonwealth has taken this appeal from an order which granted appellee's motion to suppress,[1] and argues that the hearing court erred when it directed the suppression of evidence discovered by police officers during an inventory search of a motor vehicle in their custody. We agree and reverse.

Two Philadelphia police officers, on patrol on the Schuylkill Expressway on December 31, 1985, halted a vehicle after they had observed it endanger other vehicles by weaving back and forth in traffic, across the dividing lines, at a slow rate of speed. The vehicle was occupied by a minor female driver who was unable to provide the officers with any form of identification, and a male passenger. The operator initially lied to the police concerning her identity, had red, watery eyes, provided slow responses to questions, was unable to produce a driver's license or vehicle registration, and stated that she did not know who owned the car. As a result of her demeanor, the driver was arrested on suspicion of driving while under the influence.[2] Appellee,

---

* President Judge Vincent A. Cirillo has replaced the deceased Justice Samuel J. Roberts.

1. An order suppressing evidence is appealable when it is apparent from the record that the order terminates or substantially handicaps the prosecution. *See: Commonwealth v. Dugger,* 506 Pa. 537, 543, 486 A.2d 382, 386 (1985).

2. The arresting officers testified that they did not conduct any field sobriety tests at the scene because the shoulder in the University Avenue area of the expressway is "very, very dangerous." [N.T. 87]

the passenger, was asleep when the vehicle was halted, but awoke to the questions of the officers and stated that he had borrowed the vehicle from a friend, and had given the minor driver permission to operate the car. When asked to produce identification, appellee got out of the car and reached for his belt, causing one of the officers to grab his arm. Appellee responded that he was merely reaching for his money and displayed to the officer a clear plastic bag of currency, later determined to be a sum in excess of $6,000.00. When appellee attempted to supply identification, he stated that he "lived in Philadelphia", but produced a Virginia driver's license issued to "Eric Martinson". The officer had noticed a Pennsylvania Welfare Department medical card in the appellee's wallet as he searched for his license. Appellee, upon request of the officer, displayed the card which had been issued to "Anthony Merkel". While the police were not certain that appellant had been drinking intoxicants, the manner of his response to their questions and the glassy condition of his eyes led them to conclude that appellee wasn't "in any better condition than [the arrested driver] was" to operate the vehicle. The officer who had the more direct contact with appellee at the scene, when asked why appellee was not allowed to drive the car from the scene, testified at the suppression hearing:

A. Well, at that time, I decided that we would take him into headquarters to find out exactly who he was. Also, since he said he had borrowed the car from a friend, we were going to—since we had to investigate the ownership of the car, we would take him and the vehicle in and investigate that further at headquarters.

\* \* \* \* \* \*

A. I wasn't positive that Mr. Martinson was Mr. Martinson or Mr. Merkel. As I said, he had two different identifications on him, and I had some doubt as to who he was. *No one had produced any information on the ownership of the car, and I didn't believe his condition was such that he would be able to drive.* (emphasis supplied).

Immediately upon returning to the precinct, one of the officers ran a computer check on the vehicle as well as the names "Anthony Merkel" and "Eric Martinson." No record of the registration of the vehicle was discovered. The officers had, at that time, no means of ascertaining the ownership of the car as appellee had stated that he "would not give us any information once we got into the district. He said only that his name was Eric Martinson." [N.T. 35].[3] The computer check additionally disclosed that while no warrants were outstanding for Eric Martinson, a warrant for Anthony Merkel had been issued by the State of Maryland.

The officer further testified that he related all of this information to his supervisor who instructed him to take the car into custody until the identity of the owner could be ascertained. Subsequently, pursuant to Philadelphia Police Department regulations,[4] an inventory search of the car was conducted, during the course of which a temporary registration for the vehicle, issued to Timothy Cox, 1924

3. The officer testified at the preliminary hearing that appellant "had stated that a friend owned [the car] but when he saw we were arresting the driver he said he would not answer anymore questions ... We brought the defendant, the vehicle and the driver of the car into the district because no one would tell us who owned the car."

4. The police in this case were also required to comply with Philadelphia Police Department Directive 91, Section Five, Subsection A, Number Three—Vehicles and Their Contents (temporary storage only) directing:
 (a) When the owner or operator of a vehicle is not physically able to retain possession of his or her vehicle and its contents, and no relative or other authorized person is present to accept responsibility for the property, the police officer initially assigned to the incident will:
 (1) Remove all personal property from the vehicle and place it in a police vehicle for safekeeping.
 (a) The officer will not force a lock off the compartment or trunk, but will note on the Property Receipt that either or both were locked.
 * * * * * *
 (b) When the vehicle arrives at the district, the Operations Room Supervisor will re-inventory the vehicle and add to the Property Receipt (75-3) any additional items found.
 Since appellant does not argue that the search violated the departmental regulations, we need not address that issue.

South 65th Street, Philadelphia, was discovered in the glove compartment.

When appellee arrived at the police station, the contents of his pockets were inventoried and a property receipt prepared. A trunk key for the automobile was included among appellee's effects and, as a result, used by the two officers to conduct an inventory search of the trunk. Upon opening the truck the officers saw a three and one-half foot high wooden planter, containing a plant, lying on its side in the trunk. The side of the planter facing the officers had been pried open, exposing the interior of the planter. The officers noted that the upper three-quarters of the planter was filled with dirt while the lower quarter of the planter was filled with a white powder encased in clear plastic. Upon removing the planter from the trunk, the officers discovered in the trunk an unzipped gym bag containing $5,000 in cash. The suspicion of the officers that the white material in the planter was a controlled substance was confirmed when the narcotics unit determined that the planter contained five one pound bags of methamphetamine.

The trial court concluded that the arrest of appellee was illegal because the officers did not have probable cause to arrest or detain appellee, and held that all evidence seized as a result of the initial illegal detention was inadmissible.

 The role of an appellate court in reviewing an order granting or denying a motion to suppress is to determine whether the record supports (1) the suppression court's factual findings, and (2) the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, this Court may consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as fairly read in the context of the record as a whole remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Vinson,* 361 Pa.Super. 526,

530, 522 A.2d 1155, 1157 (1987); *Commonwealth v. Reddix,* 355 Pa.Super. 514, 518, 513 A.2d 1041, 1043 (1986).

Appellee does not dispute that the arresting officers had probable cause to believe that the minor driver had violated Section 3731 of the Vehicle Code, 75 Pa.C.S. § 3731, Driving Under Influence of Alcohol or Controlled Substance, a second degree misdemeanor, 75 Pa.C.S. § 3731(e)(1). Thus, Section 3731(c) of the Vehicle Code authorized the officers to make a warrantless arrest of the driver. 75 Pa.C.S. § 3731(c). Appellee argues, however, that there was no basis upon which to detain or arrest him and that he, therefore, should have been permitted to assume control of the vehicle following the arrest of the driver.

■ Contrary to the assertion of appellee, the officers had authority, pursuant to Section 1575 of the Vehicle Code, to arrest appellee. *See: Commonwealth v. McAulay,* 361 Pa.Super. 419, 522 A.2d 652 (1987); *Commonwealth v. Burkett,* 300 Pa.Super. 72, 445 A.2d 1304 (1982). This section provides, in relevant part:

(a) **General rule.**—No person shall authorize or permit a motor vehicle owned by him or under his control to be driven in violation of any of the provisions of this Title.

(b) **Penalty.**—Any person violating the provisions of subsection (a) is guilty of the same offense as the driver of such vehicle and subject to the same penalties....

75 Pa.C.S. § 1575. As previously noted, appellee informed the arresting officers that he had given the minor driver permission to drive the vehicle. This was an admission of a violation of 75 Pa.C.S. § 1575(a), and a basis of probable cause for the arrest of appellant.

■ There exists an even further basis for finding that the inventory search of the vehicle was proper. As heretofore noted, the driver of the vehicle, after initially providing a false name to the officers, identified herself and stated that she did not have a registration for the vehicle and did not know who owned the car. Appellee stated that he had borrowed the car from "a friend" but did not offer to produce the vehicle registration and refused to provide the

name of the owner to the officers. Appellee, who stated that he lived in Philadelphia, displayed a Virginia operator's license bearing his name and photograph but also had a Pennsylvania medical card bearing the name Anthony Merkel in his wallet. It is beyond question that, under the circumstances, the police officers would have been derelict in their duty had they permitted appellee, whom they believed to be incapable of safe driving and whose identity was uncertain, to assume control of a vehicle, whose ownership they could not ascertain.

As for whether the police had lawful custody of the vehicle, the Motor Vehicle Code confers authority upon police officers to remove vehicles from the highway in certain circumstances including:

**§ 3552. Removal of vehicle by or at direction of police**

\* \* \* \* \* \*

**(c) Removal to garage or place of safety.**—Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:

\* \* \* \* \* \*

(2) The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

72 Pa.C.S. § 3352(c)(2).

■ Having concluded that appellee was lawfully arrested and that the vehicle was lawfully taken into custody, the final issue for resolution is whether the inventory search was reasonable and proper. Our venerable colleague, President Judge William F. Cercone, in *Commonwealth v. Brandt*, 244 Pa.Super. 154, 366 A.2d 1238 (1976), keenly clarified the notions and issues attendant an inventory search when, on behalf of a unanimous court, he wrote:

An inventory takes place when it is not coupled with the intent of discovering evidence of a crime. The inventory is conducted not for the purpose of uncovering incrimina-

ting evidence, but for the purpose of safeguarding the contents of the vehicle for the benefit of both the owner and the police. This benevolent purpose was recognized by the United States Supreme Court in its recent decision of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

\* \* \* \* \* \*

In explaining the noninvestigative functions of inventories the [United States Supreme] [C]ourt explained that, "These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, ... the protection [of] the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger...." (footnote omitted) 428 U.S. at 368, 96 S.Ct. at 3096.

\* \* \* \* \* \*

We believe that absent probable cause, a search of an automobile is reasonable provided that the Commonwealth prove two elements. First, the Commonwealth must show that the vehicle was lawfully within the custody of the police.

Secondly, the Commonwealth must show that the search was in fact an inventory search pursuant to the objectives laid down in *Opperman, supra,* and noted earlier in this opinion. The hearing judge must be convinced that the police intrusion into the automobile was for the purpose of taking an inventory of the car and not for the purpose of gathering incriminating evidence. Those facts and circumstances which the hearing judge must consider include the scope of the search, the procedure utilized in the search, whether any items of value were in plain view, *State v. Tully,* [166 Conn. 126] 348 A.2d 603 (1975); the reasons for and nature of the custody, *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); the anticipated length of the custody, and any other facts which the court deems important in its determination. If, after weighing all the facts and circum-

stances, the court is of the opinion that it was an inventory search of an automobile lawfully in police custody, then any evidence seized as a result of this "reasonable" inventory search is admissible. If, on the other hand, the hearing judge determines that the Commonwealth has not shown that the search was part of the police caretaking function rather than their investigative function, the probable cause-warrant standard must be used for determining reasonableness.

*Commonwealth v. Brandt, supra,* 244 Pa.Superior Ct. at 162, 366 A.2d at 1241–1242 (footnotes omitted throughout). Thus, this Court declared that an inventory search of a motor vehicle is lawful only if it is, under all of the extant circumstances, "reasonable". When the focus of the search is, as here, to protect and preserve from loss during storage such items of personal property as are carried in a vehicle, the search procedures must be reasonable, and must, as well, be restricted to those locations where items of value would normally be carried, including, necessarily, the passenger areas, the glove compartment, and the trunk.

The only evidence available for review during our determination of whether the police complied with *Brandt* is the direct testimony of the arresting officer who assumed the duty of the inventory search and the testimony of his superior who participated in that search. This direct testimony provides a clear and quite detailed picture of the procedures employed to conduct the search, and to examine the articles found in the vehicle. Moreover, the able and thorough cross-examination undertaken by counsel for appellee failed to uncover any discrepancy in all of that testimony.

Judicial examination of a challenge to a police search requires the court to balance the competing needs of society. On the one hand, the need of every society, including our free society, to provide for enforcement of its laws and thereby enable the preservation of the common weal is intrinsic to the existence of any society. That need in our society is, of course, described in constitutional parlance as

the "police power". On the other hand, the quite decisive restrictions upon the "police power" imposed by the founders and framers in the Bill of Rights bespeaks their keen awareness of the awesome nature of the "police power". The specific role of the courts then is to balance the right of society to implement its police power against the right of a citizen to be free of police intrusion. This challenging task requires the courts to balance those competing rights and then to discern: what is "reasonable"—a term which, with its kin "fairness" and "due process", defies definition, but demands determination.

 The mandate of *Brandt* required the hearing court to focus upon (1) the scope of the search, (2) the procedure utilized in the search, (3) whether any items of value were in plain view, (4) the reasons for and nature of the custody, (5) the anticipated length of the custody, and (6) any other facts deemed important. The testimony of the searching officers provides a lengthy description of the search and the purposes for the search, and makes apparent: (1) that the police did not ensnare the occupants and their vehicle, rather the erratic and dangerous manner in which the vehicle was operated signaled the attention of the police; (2) that the police did not confiscate the vehicle as contraband, but rather took it into custody due to their belief that neither occupant was fit to operate the automobile and their inability to ascertain the ownership of the vehicle; (3) that the police did not contrive a reason for the inventory search but rather conducted the search as part of their caretaking function; and, (4) that the police did not scatter and tear apart the contents of the vehicle or the trunk seeking contraband, but instead discovered the illicit substance in the ordinary course of an inventory search, which properly included the trunk of the vehicle. *See: Commonwealth v. Burgwin*, 254 Pa.Super. 417, 421, 386 A.2d 19, 24–25 (1978).[5]

5. Although the decision in *Commonwealth v. Burgwin, supra,* was split as to the issue of whether, upon the facts, the search of the car constituted an inventory search, this Court was in agreement to

142

As a result, we conclude that there is no evidentiary basis for the conclusion of the hearing court that the search was illegal. Rather, the evidence supports but one conclusion, namely, that the police here complied with the *Brandt* mandate because "the vehicle was lawfully within the custody of the police" and their "intrusion into the automobile was for the purpose of taking an inventory of the car...." *Commonwealth v. Brandt, supra* 244 Pa.Super. at 162, 366 A.2d at 1242. Since the evidence was seized during a "reasonable" and, therefore, lawful inventory search, the evidence is admissible. *See: U.S. v. Edwards,* 577 F.2d 883, 893 (5th Cir.1978).

Order reversed. Case remanded for trial. Jurisdiction relinquished.

extend the reasonableness requirement of *Opperman, supra,* to the inventory search of a trunk.