J-S43020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRELL ANDRE WARD, JR. | : | |
| | : | |
| Appellant | : | No. 1851 WDA 2017 |

Appeal from the Judgment of Sentence August 1, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013863-2014

BEFORE:  STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED NOVEMBER 21, 2018**

Darrell Andre Ward, Jr. (Appellant) appeals from his August 1, 2017 Judgment of Sentence of one to two years' imprisonment imposed following his nonjury convictions for Firearms Not to be Carried Without a License and Possession of Marijuana.[1]  Specifically, Appellant challenges the denial of his suppression motion and the sufficiency of evidence.  We affirm.

We glean the following relevant facts and procedural history from the certified record.  At approximately 2:00 A.M. on August 25, 2014, a citizen informed Patrol Officer Gary Cherep of the Borough of Munhall Police Department that there appeared to be an intoxicated driver passed out in his vehicle in the drive-through lane of the Wendy's restaurant on William Marks

---

[1] 18 Pa.C.S. § 6106(a)(1) and 35 P.S. § 780-113(a)(31), respectively.  The sentence did not asses any further penalty for the Possession of Marijuana conviction.

Drive. N.T., 6/28/17, at 3-4. At about the same time, Officer Cherep received a radio dispatch with the same information. Upon arriving at the scene, Officer Cherep saw a black Hyundai located next to the drive-through delivery window with Appellant slouched in the driver's seat with his head leaning up against the door next to the vehicle's open window. The vehicle was running and in gear, and Appellant's foot was on the brake. The officer attempted to rouse Appellant but he was unresponsive. *Id*. at 4-5. A vehicle registration search revealed that the car was registered to Appellant's mother.

In response to a call for back-up, Officer Depeligrini arrived at the scene and parked his police vehicle nose-to-nose with Appellant's vehicle just in case Appellant startled awake and stepped on the gas pedal, potentially creating a hazardous situation. *Id*. at 5. The officers then reached into the vehicle, placed it in park, and turned it off.

Officer Cherep succeeded in rousing Appellant after four or five further attempts. Once awake, Officer Cherep observed that Appellant had bloodshot, glassy eyes, appeared very dazed, and responded very slowly to Officer Cherep's questions. Officer Cherep had to ask Appellant several times for his license and registration before Appellant eventually responded. *Id*. at 5-6; 12.

Based on the circumstances and his observations, Officer Cherep believed that Appellant was under the influence of drugs or alcohol,[2] and he "planned" to arrest Appellant for suspicion of Driving Under the Influence ("DUI"). *Id*. at 6-7. Because there was no one available to drive Appellant's vehicle and it was parked in an unsafe location, the officers decided to impound Appellant's vehicle. *Id*. at 6.

While awaiting the arrival of the tow truck, Officer Cherep and Officer Depeligrini began an inventory search of Appellant's vehicle pursuant to Borough of Munhall policy as Appellant remained in the driver's seat. *Id*. at 7-8; 14-15. When the officers asked Appellant for the car key to open the locked glove box, Appellant hesitated until the officers explained that the purpose of the search was for Appellant's and the officers' safety. Appellant then voluntarily handed the car keys to the officers. *Id*. at 7-8; 14-15.

In the glove box, the officers discovered a loaded Glock handgun. *Id*. at 7-8. The officers determined that Appellant did not have a license to carry a firearm.[3] *Id*. at 11. The officers then removed Appellant from his vehicle and placed him in the back of Officer Cherep's patrol car. Officer Cherep completed the inventory search and, upon returning to his police vehicle, where Appellant had again fallen asleep, Officer Cherep detected a strong odor

---

[2] Officer Cherep did not conduct field sobriety tests of Appellant because he did not believe Appellant was capable of performing them. N.T., 6/28/17, at 7.

[3] Further investigation revealed that the gun had been stolen from the City of Pittsburgh.

of fresh marijuana coming from the back of the police car. Officer Cherep removed Appellant from the police vehicle, looked in the back seat, and discovered a small bundle of marijuana. After placing Appellant back in the police vehicle, Officer Cherep drove Appellant to the police station.

The Commonwealth charged Appellant with two counts of DUI as well as firearms offenses, Receiving Stolen Property, and Possession of Marijuana. Prior to trial, Appellant filed a Motion to Suppress all evidence, claiming that the placement of Officer Depeligrini's police vehicle blocking him in resulted in an initial detention that was not supported by reasonable suspicion, and that Appellant's subsequent arrest was not supported by probable cause. The court held a hearing on June 28, 2017, at which only Officer Cherep testified. The court denied the motion that same day.

Appellant immediately proceeded to a stipulated bench trial, after which the court found Appellant guilty of Firearms Not to be Carried Without a License and Possession of Marijuana.[4] On August 1, 2017, the court sentenced Appellant to a term of one to two years' incarceration for the firearm conviction, followed by three years' probation.[5]

---

[4] The court found Appellant not guilty of carrying a loaded weapon, and not guilty of the two counts of DUI. The Commonwealth withdrew the receiving stolen property charge.

[5] The court imposed no further penalty for the Possession of Marijuana conviction.

Following the denial of his post-sentence motions, Appellant timely appealed to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for this Court's consideration:

1. Whether the Trial Court erred when it denied [Appellant's] motion to suppress evidence when the Commonwealth failed to demonstrate that the police had reasonable suspicion or probable cause to detain [Appellant], remove him from the vehicle, or search the vehicle?

2. Whether the Trial Court erred when it found [Appellant] guilty at Count 1 – Carrying a Firearm Without a License, when the evidence presented by the Commonwealth was insufficient to support such a conviction?

Appellant's Brief at 3.

In his first issue, Appellant argues that the court erred in not suppressing the gun and the marijuana when the police blocked his car with their patrol vehicle and subjected him to an investigative detention without reasonable suspicion. Appellant further argues that the police arrested him without probable cause.

This Court's well-settled standard of review is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those

findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a *Terry*[6] stop; and (3) a custodial detention. *Commonwealth v. Thran*, 185 A.3d 1041, 1044 (Pa. Super. 2018).

A mere encounter between police and a citizen need not be supported by any level of suspicion, and does not require a citizen to stop or respond. *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017). An investigatory stop, which subjects a suspect to a stop and a period of detention, requires a reasonable suspicion that criminal activity is afoot. *Id*. "A custodial [stop] is an arrest and must be supported by probable cause." *Id*.

The determination of whether an officer had reasonable suspicion that criminality is afoot so as to justify an investigatory detention is objective and must be considered in light of the totality of the circumstances.

---

[6] *Terry v. Ohio*, 392 U.S. 1 (1968).

***Commonwealth v. Holmes***, 14 A.3d 89, 96 (Pa. 2011). "In order to establish reasonable suspicion, an officer must articulate specific facts[,] in addition to inferences based on those facts, to support his belief that criminal activity was afoot." ***Id***. at 97.

Here, the Commonwealth concedes that the officers blocking Appellant's vehicle with their police cruiser constituted an investigative detention. Appellee's Brief at 14-15. Thus, our analysis turns on whether the officers had reasonable suspicion that criminal activity was afoot to support that detention.

At the suppression hearing, Officer Cherep testified that he received both a dispatch call and a citizen's tip at approximately 2:00 A.M. that there may be an intoxicated person at a Wendy's drive-through lane. Upon arriving at the scene, Officer Cherep observed Appellant passed out, utterly unresponsive, and hunched over in his vehicle. Appellant was alone in the vehicle, and the vehicle was running and in gear directly outside of the restaurant's food delivery window.

This set of specific, uncontradicted facts, objectively viewed in light of the totality of the circumstances, strongly supports Officer Cherep's belief that criminal activity was afoot, namely, that Appellant was operating his vehicle while he may have been intoxicated. Thus, we find that the trial court correctly found that Officer Cherep had reasonable suspicion to conduct an

investigative detention of Appellant by having his fellow officer park a police cruiser in front of Appellant's vehicle.

Next, we must determine whether the officers had probable cause to arrest Appellant. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to believe that a defendant has or is committing an offense. **Commonwealth v. Runyan**, 160 A.3d 831, 837 (Pa. Super. 2017) (citation omitted). The well-established standard for evaluating whether probable cause exists is consideration of the "totality of the circumstances." **Id**. That is, probable cause for a DUI arrest is present when a police officer has sufficient facts at his disposal to warrant a prudent person to believe that the driver of a vehicle is under the influence of alcohol or drugs. **Commonwealth v. Hlubin**, 165 A.3d 1, 10 (Pa. Super. 2017), *appeal granted*, 174 A.3d 576 (Pa. Nov. 21, 2017).

After establishing a reasonable suspicion that Appellant was operating his vehicle while intoxicated based on the undisputed fact that Appellant was passed out, Officer Cherep finally roused Appellant after four or five attempts. Once awake, Officer Cherep observed that Appellant's eyes were glassy and bloodshot, and he appeared very dazed. Moreover, Appellant was very slow to respond to Officer Cherep's request for his license and registration and only turned over these items after several requests.

We agree with the trial court that these factors "ripened [reasonable suspicion] into probable cause permitting the arrest of [Appellant] for operating his vehicle while under the influence of alcohol or a controlled substance." Trial Court Opinion, 2/23/18, at 8; **see also Commonwealth v. Angel**, 946 A.2d 115, 118 (Pa. Super. 2008) (finding probable cause to arrest for DUI when appellant had slurred speech and glassy eyes); **Hlubin**, 165 A.3d at 10 (finding probable cause to arrest for DUI when appellant had glassy, bloodshot eyes and was slow to react to officer's request for her license and registration), *appeal granted*, 174 A.3d 576 (Pa. Nov. 21, 2017). Thus, we agree with the trial court that Officer Cherep had probable cause to arrest Appellant for suspicion of DUI.

Last, Appellant argues that the officers did not have probable cause to search his vehicle after his arrest. We disagree. Because the officers had probable cause to arrest Appellant and impound his car, the inventory search of the vehicle's contents was proper.

The search here, conducted in accordance with the standard procedures of the police department, is considered an inventory search. Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. **Commonwealth v. Nace**, 571 A.2d 1389, 1391 (Pa. 1990). "An inventory search of an automobile is permitted where (1) the police have lawfully impounded the [vehicle]; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and

inventorying the contents of the impounded vehicle." ***Commonwealth v. Hennigan***, 753 A.2d 245, 255 (Pa. Super. 2000); ***see also*** 75 Pa.C.S. § 3352(a), (c)(3) (outlining lawful impound procedures by law enforcement outside business districts and removal of the vehicle after person in control of the vehicle is arrested for a qualifying offense); ***Commonwealth v. Henley***, 909 A.2d 352, 359 (Pa. Super. 2006) (*en banc*) (explaining common purposes for inventory searches, including officer safety and protecting the owner's property); ***Commonwealth v. Martinson***, 533 A.2d 750, 755 (Pa. Super 1987) (opining that reasonable inventory search procedures of vehicles are restricted to locations where items of value would normally be carried, including the passenger areas, the glove compartment, and the trunk).

In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile. The second inquiry is whether the police have conducted a reasonable inventory search. ***Hennigan***, 753 A.2d at 255.

Here, Appellant's vehicle was parked in an active Wendy's drive-through lane and there is no evidence that anyone was available to drive the vehicle from the scene after Appellant's arrest. Given these facts, we see no reason to disturb the trial court's finding that the vehicle was lawfully impounded. Trial Court Opinion, 2/23/18, at 9.

Regarding whether the officers conducted a reasonable inventory search, Officer Cherep testified at the suppression hearing without

- 10 -

contradiction that he and his fellow officer followed the Borough of Munhall's standard policy regarding inventory searches of impounded vehicles, namely, that they are done on-site for the purpose of officer safety and include areas such as locked glove boxes. N.T., 6/28/17, at 14-15. Moreover, they explained this policy to Appellant after requesting the key to the glove box, which he gave to the officers without objecting or saying a word. ***See Commonwealth v. Woody***, 679 A.2d 817, 819 (Pa. Super. 1996) (upholding the validity of an inventory search when passenger had been arrested, police were required to take custody of vehicle, and the challenged evidence was likely to be found, though not in plain view); ***Martinson***, 533 A.2d at 755-56 (Pa. Super. 1987) (holding that inventory search of a vehicle was reasonable after it was taken into custody due to officer's belief that neither driver nor passenger was fit to operate the vehicle and discovery of contraband occurred in the ordinary course of inventory search).

The trial court properly concluded that there was probable cause for the officers to arrest Appellant for suspicion of DUI. Given the underlying facts of the arrest, Appellant's vehicle was properly impounded because of its location and lack of an available driver to move it from the scene. Appellant presented no evidence or argument to dispute the trial court's finding that Officer Cherep and Officer Depeligrini conducted the inventory search in accordance with the Borough on Munhall's standard policy of securing and inventorying the

contents of an impounded vehicle. Appellant does not contest that the procedures employed by the officers during the search were unreasonable.[7]

We agree that, under the totality of the circumstances, the suppression court's factual findings are supported by the record, and we are bound by those findings. Thus, the trial court properly refused to suppress the evidence discovered during the inventory search.

In the second issue before us, Appellant's counsel asserts that the Commonwealth failed to prove that Appellant carried a firearm without a license. Appellant's Brief at 13-14.

This Court's standard of review of the challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial [ ] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the

---

[7] Appellant also presents no argument that his giving the officers the key to open the glove box was coerced or otherwise involuntary.

credibility of witnesses and the weight of the evidence produced[,]
is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Talbert***, 129 A.3d 536, 542-43 (Pa. Super. 2015).

The Crimes Code has defined the offense of Firearms Not to be Carried

Without a License, in relevant part, as follows:

**(a) Offense defined.--**

(1) … [A]ny person who carries a firearm in any vehicle or any person
who carries a firearm concealed on or about his person, except in his
place of abode or fixed place of business, without a valid and lawfully
issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

In order to convict a defendant for Firearms Not to be Carried Without

a License, the Commonwealth must prove that the weapon was a firearm;

that the firearm was unlicensed; and that where the firearm was concealed

on or about the person, it was outside his home or place of business.

***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa. Super. 2004).  The

Commonwealth may sustain its burden of proving every element of a crime

beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Wise***, 171 A.3d 784, 790 (Pa. Super. 2017).

Where a firearm is not found on a defendant's person, Appellee may

satisfy its burden by establishing constructive possession:

Constructive possession is a legal fiction, a pragmatic construct to
deal with the realities of criminal law enforcement.  Constructive
possession is an inference arising from a set of facts that
possession of the contraband was more likely than not.  We have
defined constructive possession as conscious dominion.  We
subsequently defined conscious dominion as the power to control

- 13 -

the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013).

This Court has affirmed a finding of constructive possession where the appellant was the sole occupant of a vehicle in which a gun was found, even though the appellant did not own the vehicle. ***Commonwealth v. Parker***, 847 A.2d 745, 751-52 (Pa. Super. 2004). ***See also Commonwealth v. Carter***, 450 A.2d 142, 147-48 (Pa. Super. 1982) (holding that the trial court properly found that the appellant had constructive possession because, *inter alia*, the gun had been within the area of his immediate control).

Here, there is no dispute that the officers found a firearm in the glovebox of the vehicle that Appellant was driving, and that Appellant did not have a license to carry a firearm. Thus, we must resolve whether the court properly determined that Appellant constructively possessed the firearm.

As the trial court noted, Appellant was the only person in the vehicle. The glove box where the officers found the weapon was well within Appellant's reach and was, thus, within the area of Appellant's immediate control. In viewing these facts in the light most favorable to the verdict winner, we agree with the trial court that there is sufficient evidence to conclude Appellant possessed the weapon. Accordingly, the trial court properly concluded that the Commonwealth proved every element of the crime of Firearms Not to be Carried Without a License beyond a reasonable doubt.

Having concluded that the trial court properly denied the suppression motion and Appellant's claim of insufficient evidence supporting the firearm offense is without merit, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2018