J-A07045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CIRILO EDWIN BONILLA | : | |
| | : | |
| Appellant | : | No. 465 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 29, 2024
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0004954-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:        **FILED: OCTOBER 1, 2025**

Appellant, Cirilo Edwin Bonilla, appeals from the judgment of sentence imposed on February 29, 2024, by the Court of Common Pleas of Lancaster County (trial court). He challenges the denial of his suppression motion on the ground that police lacked a lawful basis to search his vehicle and obtain the evidence that resulted in his conviction. Upon review, we affirm.

The trial court summarized the facts established at the suppression hearing:

> On July 30, 2022, Officer [Andrew] Conard responded to a dispatch for a suspected driving under the influence incident. The caller reported observing a male who appeared to be intoxicated getting into the driver's seat of a car. Upon arriving on the scene, Officer Conard saw a male, later identified as Appellant, passed out in the driver's seat of a black Acura SUV. Officer Conard's partner, Officer Baker, approached the driver's side of the vehicle, while Officer Conard approached the passenger side. The officers shined their flashlights inside of the vehicle, causing Appellant to wake up.

According to Officer Conard, Appellant appeared startled, and he put his window down to speak to the officers. Appellant appeared to have glossy eyes, smelled of alcohol, and had slurred speech. When the officers illuminated the inside of the vehicle they saw empty beer bottles. Officer Baker instructed Appellant to get out of the SUV and then 'removed him from the car.' Prior to exiting the SUV, Appellant removed the crossbody bag he was wearing and put it on the floor in front of the front passenger seat. Officer Conard testified that, at that point, Appellant was not free to leave.

Officer Conard testified that he was able to see a clear 'corner-tie bag' sticking out of Appellant's crossbody bag. He stated that, based on his experience, the [corner-tie] bags are typically used to package drugs. He further explained that 'they put whatever the allotted amount of marijuana is in the bag. They then rip off that portion, make a knot and tie it.'

Officer Conard testified that his police department's policy is to not charge people with driving under the influence ("DUI") in situations where they 'are trying to do the right thing and park and sleep.' Therefore, the officers were not planning to charge Appellant with a DUI. Instead, the officers were going to charge Appellant with public drunkenness; however, due to Officer Conard's suspicions surrounding the corner-tie bag in Appellant's bag, they did not issue a citation on the scene. In accordance with the police department's policy, the officers retrieved Appellant's cell phone from the SUV, and allowed him to call his sister for a ride. Appellant's sister arrived to pick him up approximately ten minutes later, and Appellant was released from custody at that time.

The officers had Appellant's SUV towed back to the police station and held there while the officers obtained a search warrant. Officer Conard testified that the officers wanted to obtain a search warrant to search Appellant's bag. He explained that he is aware that corner tie bags are often used to contain controlled substances, and that he has located controlled substances and weapons inside of these types of cross-body bags. The search warrant was issued on July 30, 2022, at 6:45 p.m. The search was executed at 7:05 p.m. The officers seized the following items from the SUV during the search: a Kimber 9mm handgun, 3.7g of

marijuana, cigarette papers, clear corner tie bags, and $1,088 in
U.S. currency.

Trial Court Opinion, 7/16/24, at 2-3.

Appellant was charged with receiving stolen property, possession of a firearm prohibited, firearms not to be carried without a license, possession of marijuana, use/possession of drug paraphernalia, and various summary offenses. He filed a motion to suppress the evidence recovered from the vehicle. In the motion, Appellant challenged the initial detention, the seizure of the vehicle, the issuance of the search warrant, and Appellant's statements.

At the suppression hearing, Appellant clarified that he was challenging the initial detention and seizure of the vehicle, but not the validity of the warrant. N.T. Suppression 5/17/23, at 4-5. The trial court denied Appellant's motion, finding that there was sufficient probable cause within the four corners of the affidavit to support the issuance of the warrant. *Id.* at 50-51. In so finding, the trial court explained:

> Although the officers unlawfully impounded Appellant's vehicle, the evidence recovered from the vehicle was properly admitted under the independent source doctrine.

Trial Court Opinion, 7/16/24, at 10.

The parties proceeded to a stipulated bench trial wherein Appellant was found guilty of all charges except receiving stolen property. The trial court sentenced Appellant to an aggregate imprisonment term of four and a half to 10 years. This appeal followed. Appellant raises a sole issue for our review:

> Did the trial court err in denying the motion to suppress the evidence from the various police searches of the legally parked

- 3 -

vehicle after finding that the police illegally seized the vehicle without a warrant and all searches stemmed from that illegal seizure?

Appellant's Brief, at 7.

Our standard of review when addressing a challenge to the denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted). Our scope of review is limited to the record created during the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

"It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019). "If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge." *Commonwealth v. Johnson*, 86 A.3d 182, 187 (Pa. 2014). The Commonwealth must prove, by a preponderance of the evidence, that the subject evidence was not obtained in violation of the defendant's rights. *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012).

Appellant argues that the trial court erroneously applied the "independent source" doctrine to find that his vehicle was legally searched. He contends that the trial court "mistakenly indicated that only evidence known to police prior to the illegal seizure was used to secure the search warrant." Appellant's Brief, at 25. The search warrant included three paragraphs regarding a canine sniff that occurred after the vehicle was towed, but before the warrant was obtained. *Id.* at 25-26.

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against unreasonable searches and seizures by law enforcement. *See* U.S. Const. amend. IV; Pa. Const. Art. I, § 8. "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Evans*, 153 A.3d 323, 327 (Pa. Super. 2016). Those exceptions include (1) consent; (2) plain view; (3) inventory search; (4) exigent circumstances; (5) automobile exception; (6) stop and frisk; and (7) search incident to arrest. *Id.* at 327-28.

Here, the Commonwealth argued that police were authorized to seize Appellant's vehicle to obtain a search warrant pursuant to 75 Pa.C.S.A. § 3352(c)(2) (removal to garage or place of safety), and therefore, the vehicle was subject to an inventory search. N.T. Suppression, 5/17/23, at 49. Alternatively, it argued that even if the seizure was illegal, the search was

valid due to the independent source doctrine because the officers obtained the warrant before the search occurred. *Id.*

Inventory searches are a well-defined exception to the warrant requirement. *Evans*, *supra*. The purpose of the inventory search is not to uncover criminal evidence:

> Rather, it is designed to safeguard seized items in order to benefit both the police and the defendant. Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned.

*Commonwealth v. Smith*, 808 A.2d 215, 224 (Pa. Super. 2002). An inventory search is permissible where: (1) the police have lawfully impounded the automobile; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the content of the impounded vehicle. *Commonwealth v. Hennigan*, 753 A.2d 245, 255 (Pa. Super. 2000).

In Pennsylvania, police are authorized to impound a vehicle "in circumstances that involve the community care-taking function of the police, such as public safety concerns and traffic control concerns, and thus, comport with constitutional standards for impoundment." *Id.* at 259. Statutory authority exists for the seizure of vehicles at the direction of police:

> **Removal to garage or place of safety.--**Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of

safety any vehicle found upon a highway under any of the following circumstances:

(1)     Report has been made that the vehicle has been stolen or taken without the consent of its owner.

(2)     The person or persons in charge of the vehicle are physically unable to provide for the custody or removal of the vehicle.

(3)     The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before an issuing authority without unnecessary delay.

(4)     The vehicle is in violation of section 3353 (relating to prohibitions in specific places) except for overtime parking.

(5)     The vehicle has been abandoned as defined in this title.

75 Pa.C.S.A. § 3352(c).[1] While **Hennigan** notes that the authority of police to impound a vehicle is derived from its community care-taking function, Section 3352 separately accounts for the traditional care-taking functions where the police have always been allowed to tow a vehicle:

For example, section (c)(5) addresses abandoned vehicles. Section (c)(2) addresses situations where the person or persons in charge of the vehicle are incapable of providing custody or removal of the vehicle. Section (c)(4) directs attention to the traditional parking situations where the vehicle might pose a hazard or impede the orderly flow of traffic.

_____

[1] We recognize that 75 Pa.C.S.A. § 6309.2 (Immobilization, towing and storage of vehicles for driving without operating privileges or registration) also authorizes police to immobilize and/or tow a vehicle. However, Section 6309.2 only applies where the person's operating privilege has been suspended or revoked, the person is unlicensed, or the vehicle does not have a valid registration. Since Appellant had a valid license and the vehicle was registered, Section 6309.2 is not applicable here.

*Commonwealth v. Bailey*, 986 A.2d 860, 863 (Pa. Super. 2009). "[Subsections (c)(2), (4), and (5) appear] to deal with a situation where a vehicle is left unattended on a highway because the person in charge of the vehicle cannot remove it from the highway or because the vehicle is in violation of the law or abandoned." *Hennigan*, 753 A.2d at 258. Vehicles left unattended on the highway raise public safety and traffic control concerns. *Id.* "Thus, where the sole issue is the safety of the defendant's legally parked vehicle pending an arrest, the police do not have the authority to impound said vehicle absent some reasonable nexus to the alleged crime or to a community care-taking responsibility." *Id.* at 260.

To lawfully impound Appellant's vehicle, the police had to satisfy at least one of the above enumerated circumstances. The Commonwealth argued, specifically, that police were permitted to impound Appellant's vehicle pursuant to subsection 3352(c)(2). This subsection authorizes the police to seize a vehicle where the person in charge of the vehicle is physically unable to provide for the custody or removal of the vehicle.

There are only a few cases that address this subsection. In *Commonwealth v. Martinson*, 533 A.2d 750 (Pa. Super. 1987), we found that the defendant's vehicle was lawfully seized pursuant to subsection 3352(c)(2) because the driver could not produce a registration for the vehicle and did not know who the owner was. *Martinson*, 533 A.2d at 754. The defendant said he borrowed the car from a friend yet refused to provide the

name or other identifying information. *Id.* Similarly, we have held that officers satisfied subsection 3352(c)(2) where the defendant's vehicle "was disabled and straddling the centerline of a state route, [and] was a danger to the community[.]" *Smith*, *supra*.

In the instant case, the vehicle was legally parked, did not pose a danger to anything or anyone, and was not reported stolen. N.T. Suppression Hearing, 5/17/23, at 21, 34. Based on this record, we cannot conclude that the Commonwealth met its burden of proving that Appellant's vehicle was lawfully seized pursuant to subsection 3352(c)(2). Unlike the defendants in *Martinson* and *Smith*, Appellant informed officers that his girlfriend owned the vehicle, and the vehicle was not parked in a way that was a danger to the community. Thus, there were no safety or traffic control concerns here because Appellant's vehicle was legally parked; therefore, officers were not authorized to impound the vehicle. As the vehicle was not legally impounded, the inventory search exception is not applicable.

Having determined that the inventory search at issue here did not meet the warrant exception, we next consider whether, as the trial court found, the independent source doctrine applies.

In its 1925(a) opinion, the trial court reasoned that "the affidavit of probable cause was based upon facts that the police learned prior to seizing Appellant's vehicle[,]" and the vehicle was not searched until the warrant was obtained. Trial Court Opinion, 7/16/24, at 9-10. In so finding, the court relied

upon the following facts from both police testimony and the affidavit entered into evidence at the suppression hearing:

> I observed that the male was wearing a cross-body bag black in color on his person and Officer Conard advised me that he observed a clear corner tie bag sticking out from the back of the [bag] that was tilted towards Officer Conard. That Officer Conard and I also observed a large amount of cash in this cross-body bag. That the male took his bag off and placed it on the passenger side front floor leaning against the center console after I gave him instructions on how I was going to help him from the vehicle.
>
> * * * *
>
> That I did not allow [Appellant] to reenter the vehicle to secure his cell phone due to him needing to place the key in the ignition to place the windows up due to his intoxicated state. That when I entered the vehicle to place the windows up and lock the vehicle I observed the corner tie bag and a large amount of cash in the cross-body bag.

*Id.* at 10 (citing Commonwealth's Exhibit 1, Affidavit of Probable Cause). Significantly, the trial court's finding of probable cause did not rely on the canine sniff.

Appellant contends that the trial court erred in relying only on those facts to apply the independent source doctrine because the affidavit contained additional facts that police subjected the vehicle to a canine sniff after it was illegally seized, but before the warrant was secured. *See* Appellant's Brief, at 25-26. Notably, Appellant does not challenge the four corners of the affidavit. Rather, he contends that the trial court erred in finding that the officers possessed probable cause to search the bag prior to towing the vehicle to find the independent source doctrine applicable. We disagree.

- 10 -

Generally, evidence obtained from unconstitutional police conduct must be suppressed. ***Commonwealth v. Williams***, 2 A.3d 611, 619 (Pa. Super. 2010). One exception is where the evidence was gained from an independent source. ***Id.***

> We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

***Id.*** (citing ***Wong Sun v. U.S.***, 371 U.S. 471, 487-88 (1963)). Thus,

> our Supreme Court has held that where there is **probable cause independent of police misconduct** that is sufficient in itself to support the issuance of a warrant, the police should not be placed in a worse situation than they would have been absent the error or violation under which the evidence was seized.

***Commonwealth v. Ruey***, 854 A.2d 560, 564 (Pa. Super. 2004) (*en banc*) (emphasis added).

Probable cause is established when "the facts and circumstances which are within the knowledge of the officer . . . are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009). We apply a totality of circumstances test to determine whether probable cause exists. ***Id.*** An officer's experience may be a relevant factor. ***Id.*** at 935. Our Supreme Court cautioned, however,

> that an officer's testimony in this regard shall not simply reference training and experience abstract from an explanation of their

- 11 -

specific application to the circumstances at hand. . . . [A] court cannot simply conclude that probable cause existed based upon nothing more than the number of years an officer has spent on the force. Rather, the officer must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence. Indeed, a factor becomes relevant only because it has some connection to the issue at hand.

*Id.* (citations and quotation marks omitted).

Here, the police had probable cause to justify their search. Initially, the police received a report of a male (Appellant) who appeared intoxicated and entered the driver's seat of a legally parked vehicle. The vehicle was not running and no one observed Appellant driving. Officer Baker approached the driver's side, with Officer Conard on the passenger side. Officer Conard observed "the top of a clear corner-tie bag[,] the knotted portion and extra material" sticking out of a cross-body bag worn by Appellant. N.T. Suppression, 5/17/23, at 11-12. Before exiting the vehicle, Appellant removed the cross-body bag and placed it on the floor of the passenger side. *Id.* at 11-12. Officer Conard believed this act indicated Appellant was trying to distance himself from the bag. *Id.* at 41.

Officer Conard immediately recognized the "corner-tie bag" as drug paraphernalia based on his training and experience. *Id.* at 12, 39. He explained that marijuana is typically packaged in this manner. *Id.* at 12. Regarding cross-body bags, Officer Conard testified that in his experience, "they usually contain drug paraphernalia, drugs and sometimes firearms." *Id.* at 11. He further explained that he often finds that firearms follow drugs, and

- 12 -

he has consistently encountered many persons who are in possession of both. *Id.* at 17. Additionally, both officers observed a large amount of cash inside the bag.

Here, the facts supporting the finding of probable cause were independent from the illegal seizure and subsequent canine sniff. Prior to towing Appellant's vehicle, Officer Conard observed a corner-tie bag and a large amount of cash in Appellant's bag. Based on his training and experience, he immediately recognized the corner-tie bag as drug paraphernalia. Combined with his observation of a large amount of money in Appellant's bag, Officer Conard reasonably believed that Appellant was committing a crime. Thus, probable cause was independent from the illegal seizure. Under the totality of the circumstances, we conclude that the officers possessed the requisite probable cause to believe evidence of criminal activity would be found in Appellant's bag. As such, the trial court did not err in applying the independent source doctrine to the facts of this case.[2]

_____

[2] As Appellant did not challenge the validity of the warrant, we need not determine whether the affidavit established probable cause. The question before us is whether the facts support a finding of probable cause to search Appellant's bag *prior to* the illegal seizure.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/1/2025